338 So.2d 654 (1976)
STATE of Louisiana
v.
Ernest SHARP.
No. 57804.
Supreme Court of Louisiana.
October 6, 1976.
*655 George Griffing, Griffing & Scott, Jonesville, for defendant-appellant.
*656 William J. Guste, Jr., Atty. Gen., Della Hayes Boyd, Barbara Rutledge, Asst. Attys. Gen., Speedy O. Long, Dist. Atty., Jena, R. Neal Wilkinson, Staff Atty., Baton Rouge, for plaintiff-appellee.
CALOGERO, Justice.
Defendant Ernest Sharp was indicted by a grand jury in LaSalle Parish for committing the crime of second degree murder, in violation of La.R.S. 14:30.1. He shot his sister's husband with a British 303 rifle after going to the victim's house and calling him outside. After trial, a jury found defendant guilty as charged, and he was sentenced to life imprisonment at hard labor. On appeal defendant relies upon eight assignments of error.[1]
ASSIGNMENTS OF ERROR NOS. 1, 2 and 3.
Defendant complains that the trial court erred in admitting into evidence, over his objection, several oral inculpatory statements purportedly made by him (assignment of error number one). Additionally, he urges that the trial court erred in not granting a mistrial based upon the statements' alleged improper introduction (assignment of error number two), and in not granting his alternate oral motion for a continuance after the court ruled this statement admissible at the outset of trial (assignment of error number three). These assignments are closely related; therefore, we shall discuss them together.
The issue prompting these assignments arose in this manner. On October 30, 1975, the defendant filed a motion for a bill of particulars asking, among other things, whether the state held, possessed, or intended to use at the trial, any oral or written statements, admissions or confessions made by the defendant. In its answer, the state asserted that it was not required to respond to defendant's inquiries. However, a contradictory hearing was held on the motion and the state thereafter prepared an amended answer to defendant's bill of particulars. In its response to the question concerning oral statements, admissions, or confessions, the state, after changing its second answer, responded that it held "an oral admission" made by the defendant and that it intended to use that admission at the trial. The oral admission presumably alluded to was a statement defendant made, immediately following the shooting, to the victim's wife (defendant's sister).
Then, immediately prior to opening statement, the state, pursuant to Louisiana Code of Criminal Procedure article 768, presented to the defense a notice of intent to use inculpatory statements made by the defendant, listing the names of six witnesses who would testify concerning inculpatory statements made by the defendant at the scene of the crime upon being arrested. They also listed the names of five additional witnesses who would testify that the defendant prior to the offense had threatened the life of the victim.
When defendant objected to the use of the eleven witnesses, he contended that to his detriment he had been misled by the state to assume that only one inculpatory statement was held by the state. He relies upon State v. Boothe, 310 So.2d 826 (La. 1975), which he characterizes as nearly identical to the instant case. When the court overruled his objection to the use of the witnesses for the stated purpose he moved for a mistrial. When his mistrial was denied he sought a continuance, which was also denied.
Although the trial judge overruled the objection, he did, following a stipulation, limit the state to using three of the six witnesses who were to relate oral inculpatory statements made at the scene of the crime, namely, the three witnesses who had apparently testified to the same effect at a previously conducted preliminary hearing.
First of all we should note the distinction between the three witnesses who were later to testify concerning oral and inculpatory *657 statements made at the scene of and following the crime, and the five witnesses who were being produced to relate that defendant had threatened to kill the victim prior to the incident in question.
With respect to the latter, these statements are not inculpatory within the meaning of Code of Criminal Procedure article 768. We have held that inculpatory statements within the contemplation of this provision involve "out of court admissions of incriminating facts made by the defendant after the crime has been committed." State v. Wells, 306 So.2d 695 (La.1975); State v. McKinnon, 317 So.2d 184 (La.1975). Inasmuch as these were not inculpatory statements, it was not inappropriate for the state to neglect to allude to them in the answer to the motion for bill of particulars. Furthermore, it was not even necessary for the state to apprise the defense prior to trial as per C.Cr.P. art. 768 of its intent to use these five statements although out of an abundance of caution, apparently the state did so advise defendant.
With respect to the three witnesses and the oral inculpatory statements which they were to relate, the content, of those oral inculpatory statements are not subject to pre-trial discovery by motion for bill of particulars. State v. Nix, Mule and Fulford, 327 So.2d 301 (La.1975); State v. Berry, 324 So.2d 822 (La.1975); State v. Major, 318 So.2d 19 (La.1975). Nonetheless, if the defendant is misled by an answer to a motion for bill of particulars relating that there are no confessions or inculpatory statements of any character, there is a basic unfairness which this Court found in State v. Boothe, supra, constituted reversible error.
In the case at hand the state's answer to the bill of particulars was seemingly inaccurate and misleading in that they had related that they had only one such oral inculpatory statement. On the other hand, the case is distinguishable from Boothe because in this case, the defendant was not misled, for he was acutely aware from the preliminary hearing that the state had three witnesses who were going to testify that the defendant made the post-crime oral inculpatory statements. In fact, at the preliminary hearing defendant and his counsel heard that very testimony and were afforded the opportunity to cross-examine the three witnesses. There can be no doubt that defendant in fact had actual notice that the state held more than one oral inculpatory statement.
The "misrepresentation" on the part of the state in this case, unlike that which took place in State v. Boothe, was not and could not have had prejudicial effect to the defendant who was acutely aware of the existence of those statements. We therefore find non-meritorious the defense contentions in assignments one, two and three.
Accordingly assignments one, two and three lack merit.
ASSIGNMENT OF ERROR NO. 4.
Defendant complains that the trial court erred in denying his motion for a directed verdict at the conclusion of the state's case.
As it formerly read, La.Code of Criminal Procedure article 778 provided:
"In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"If the court denies a defendant's motion for a directed verdict or judgment of acquittal at the close of the state's case, the defendant may offer his evidence in defense."
However, the Louisiana legislature by Act No. 527 § 1 of 1975, amended this provision deleting the portion which allowed *658 the trial judge to direct a verdict in jury cases. La.C.Cr.P. art. 778 now provides:
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense. Amended by Acts 1975, No. 527, § 1."
The offense for which defendant was tried occurred on September 20, 1975, after the effective date of this amendment. The indictment was handed down in October and defendant was tried by a jury in January of 1976. We thus find the assignment of error without merit.
ASSIGNMENT OF ERROR NO. 8.
Defendant assigns as error the trial court's denial of his motion for a new trial upon the ground that the evidence indicated he acted in self defense, and that the state failed to prove beyond a reasonable doubt that the shooting was not done in self defense.
Louisiana Code of Criminal Procedure article 851 provides in relevant part:
"The court, on motion of the defendant, shall grant a new trial whenever: (1) The verdict is contrary to the law and the evidence."
In State v. Plummer, 281 So.2d 716 (La. 1973) we said:
"LSA-C.Cr.P. Art. 851(1) permits the trial judge to grant the defendant a new trial if the verdict rendered by the jury is contrary to the law and the evidence. This power is exclusively that of the trial judge when inquiry is directed to the alleged insufficiency of the evidence (as contrasted with no evidence at all). This Court is prohibited from reviewing questions of fact in criminal cases. LSA-Const. Art. VII, Sec. 10; LSA-C.Cr.P. Art. 858. In accordance with these provisions, we have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Williams, 262 La. 160, 262 So.2d 507 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Singleton, 252 La. 976, 215 So.2d 512 (1968); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967)." See also State v. Jack, 332 So.2d 464 (La.1976); State v. Vince, 305 So.2d 916 (La.1974).
Thus, we are limited in reviewing the record in this case to determine whether the state presented any evidence at the trial which would indicate that defendant did not kill the victim in self-defense. The state, of course, does bear the burden of proof beyond a reasonable doubt that a homicide was feloniously committed and was not perpetrated in self-defense. State v. Patterson, 295 So.2d 792 (La.1974).
Defendant asserts that the state offered "no evidence" at all that the killing here was not justifiable as self-defense. Additionally, he argues that the officers who investigated the crime failed to "look for evidence relative to self defense."
We have reviewed the testimony of the state's witnesses. Rather than establishing that the state failed to present any evidence on this essential element of the crime, the transcript is replete with testimony negating self-defense.
Prior to the motion for a directed verdict, the state had introduced evidence that defendant had threatened to kill the deceased on two prior occasions. No blood was found on the buck knife with which the deceased was allegedly attacking the defendant. Defendant rarely visited the deceased, yet on the night in question, defendant called the deceased out of his house and only a short time later the fatal shot was fired. Near the decedent's right hand there was found, not a knife, but a beer bottle. An expert in criminology testified that no powder residue *659 was found on the decedent's shirt, negating defendant's testimony that he fired from twenty seven (27") inches with defendant advancing on him; and if only twenty seven inches had separated the principals at the time the shot was fired, as defendant testified, there would likely have been a considerable amount of powder on the shirt. Also, the murder weapon left residue up to four (4') feet, which would indicate that, if the rifle was fired from the defendant's shoulder, defendant would have been standing at least seven and one-half (7 ½') feet from the deceased. There was also testimony that almost immediately before the fatal shot was fired, the deceased was seen with a beer bottle in his right hand. The state further introduced the testimony of a witness who had ridden in the defendant's car the night before the slaying, who noticed only an exhaust leak. At this time there was no problem with the alternator repair of which defendant related as his reason for going to the victim's residence.
In view of the foregoing, defendant's assignment of error number eight lacks merit.
ASSIGNMENT OF ERROR NO. 7.
Defendant urges that the trial court erred in not granting him a new trial upon his showing that witnesses under a sequestration order had mingled with spectators and discussed the case with spectators and among themselves during the trial.
La.Code of Criminal Procedure article 851 provides inter alia:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
"(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment;
* * *".
Defendant relies on testimony adduced at the hearing on the motion for new trial to establish the existence of prejudicial error said to have been created by violation of the trial court's sequestration order.
Three witnesses were presented at the hearing on the motion for new trial who testified essentially that at the trial various witnesses who testified, and were to testify, engaged in conversation relative to the case in the hallway outside the courtroom during the course of the trial. The three witnesses distinctly did not testify that they had heard any conversation indicating any witnesses were intending to change their testimony or hoping to effect the change of testimony on the part of anyone else.
It was nonetheless established that a number of the witnesses did not comply with the sequestration order by which they were instructed not to discuss the case with anyone but the trial attorneys. The court overruled the motion for new trial and it is this ruling of the trial court which is urged upon us as having been erroneous.
The state properly observes that a motion for new trial must rest upon a finding of prejudice to the accused (See C.Cr.P. art. 851) and they contend that noncompliance in this instance was not shown to have resulted in such prejudice. Had violation of the sequestration order by a prospective witness been brought to the court's attention prior to presentation of his testimony, the trial judge would have been permitted in his discretion to allow such witness to testify notwithstanding noncompliance. State v. Lewis, 288 So.2d 324 (La.1974); State v. Browning, 290 So.2d 322 (La.1974).
In the instant case noncompliance with the sequestration order was shown post-trial by evidence presented in connection with the motion for a new trial. The trial judge has no less discretion in this situation. He did not abuse that discretion in finding as he did from the facts presented that defendant had not been prejudiced.
*660 ASSIGNMENT OF ERROR NO. 10.
Defendant urges that the trial court erred in failing to grant his motion for new trial insofar as it was based on the trial court's failure to instruct the accused that he could waive his right to jury trial.
Article I, § 17 of the Louisiana Constitution of 1974 provides that "except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury."
Article 780 of the Code of Criminal Procedure, as amended effective January 1, 1975, contains the same provision that defendant may knowingly and intelligently waive his right to a trial by jury in non-capital cases. That article goes on to state, "at the time of arraignment, the defendant in such cases shall be informed by the court of his right of waiver and election."
In the case at bar it appears that this defendant at his arraignment (which he attended along with his court appointed counsel) was not specifically advised by the trial judge of his right of waiver and election. We are nonetheless constrained to conclude that defendant has not been sufficiently prejudiced thereby, in this case, to warrant reversal of his conviction.
First of all we review the merit of the contention, notwithstanding that he filed the inappropriate motion for a new trial rather than the motion in arrest of judgment, to raise the issue.[2]
While Article 780 does state that the defendant shall be informed by the court of his right to waiver and election, the constitutional provision, Article I, § 17, merely relates that defendant may knowingly and intelligently waive his right to a trial by jury. While we are disinclined to treat this statutory directive lightly, we are equally satisfied that this defendant did not suffer deprivation of a substantial statutory right (See Article 920), that is, of being advised by the court of his right to waiver and election, since we are satisfied that through informed, able and experienced counsel he was aware of the right to waive the jury and did opt not to do so. Counsel in argument candidly admits that, in effect, the crux of his argument is simply that defendant should have been instructed appropriately by the trial judge at his arraignment. He does not argue that he was not aware of the option, nor that he did not deliberately exercise it. He likens the directive of Article 780 to the on-the-record requirement of a Boykinization. We do not sanction and will not hold to a hard and fast rule to the effect that failure of the court to verbalize the option at arraignment of defendant necessarily constitutes reversible error. We are satisfied in this case that defendant was aware of his option through advice of counsel and opted to be tried by jury and not waive that right.
The trial judge's omission in this case was not prejudicial to defendant.
The assignment lacks merit.
ASSIGNMENT OF ERROR NO. 11.
Defendant contends that the trial court committed reversible error when it admitted the testimony of Tommy Pippins, the minor (8 years old) child of the deceased.
Defendant claims that, because Tommy Pippins responded, when asked whether he knew what an oath was, and whether he knew what would happen if he lied, that he did not know, his testimony was incompetent.
La.R.S. 15:469 provides:
"Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a *661 witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness."
Reviewing his testimony in its entirety it is clear that the child had sufficient understanding to be a witness. While at first he said he did not know what an oath is, and that he does not know what happens if he tells a lie, upon further questioning it was evident that he was simply unfamiliar with the courtroom experience.
In due course he acknowledged that he knew he was not supposed to tell a lie, that he could be punished for laying, and that taking an oath was promising God that what one says is true.
The trial judge is granted wide discretion by this article in determining the competency of witnesses under 12 years old. State v. Pace, 301 So.2d 323 (La.1974). An examination of the record suggests that the trial court's decision to admit the testimony of this child was not an abuse of his discretion. Thus, this assignment of error lacks merit.
For the foregoing reasons defendant's conviction and sentence are affirmed.
NOTES
[1] Defendant originally assigned twelve errors for this Court's review. However, in brief, he abandoned assignments numbers 5, 6, 9, and 12. Therefore, they will not be considered. See State v. Domingue, 298 So.2d 723 (La. 1974).
[2] La.C.Cr.P. art. 859 as amended provides as follows:

Grounds for arrest of judgment
The court shall arrest the judgment only on one or more of the following grounds:
. . . . .
(4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;"